UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRITTANY BLACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:23 CV 413 CDP |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Brittany Black brings this action under 42 U.S.C. § 405 seeking judicial review of the Commissioner's final decision denying her claims for disabled adult child's insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*  Because the Commissioner's final decision is not supported by substantial evidence on the record as a whole, I will reverse the decision and remand for further proceedings.

## I.  Disabled Adult Child Insurance Benefits

The Social Security Act provides disability insurance benefits for a disabled adult child based on the earnings record of the claimant's parent who is an insured

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted for former Acting Commissioner Kilolo Kijakazi as the defendant in this action.

person entitled to old-age or disability benefits or has died a fully or currently insured individual.  42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a).  To qualify for child benefits as a disabled adult, the claimant must meet several criteria.  20 C.F.R. § 404.350(a)(1)-(5).  As relevant here, the claimant must be "18 years old or older and have a disability that began before [she] became 22 years old[.]"  20 C.F.R. § 404.350(a)(5).

In April 2019, the claimant here, Brittany Black, applied as an adult for child benefits on each of her parents' earnings records.  Black was 34 years old when she applied for benefits.  She turned 22 on October 1, 2006.  Accordingly, to be eligible for child benefits, her disability must have begun on or before September 30, 2006.  In her applications for benefits, Black claimed she became disabled on January 1, 2003, because of lupus nephritis, kidney disease, "neurology," chronic migraines, depression, anxiety, sleep issues, parotid glands, anemia, arthritis, and high cholesterol.

## II.  Procedural History

In July 2019, the Social Security Administration (SSA) made an initial decision to deny Black's April 2019 applications for adult child benefits.  On reconsideration, the SSA denied Black's claims on November 25, 2019.  At Black's request, a hearing was held before an administrative law judge (ALJ) on August 18, 2021, at which Black, a medical expert (ME), and a vocational expert

(VE) testified.  Black did not have counsel; she represented herself at the hearing.[2]
The ALJ denied Black's claims for child benefits on September 15, 2021, finding
that ME and VE testimony supported a conclusion that Black had the residual
functional capacity (RFC) to perform work in the national economy before she
turned 22 years old and was therefore not under a disability at any time before
attaining age 22.  On August 11, 2022, upon review of additional evidence, the
Appeals Council denied Black's request for review of the ALJ's decision.  The
ALJ's decision is thus the final decision of the Commissioner.

In this action for judicial review, Black contends that the ALJ's decision is
not supported by substantial evidence on the record as a whole, arguing that the
ALJ improperly weighed the opinion evidence of record, failed to develop the
record, and improperly assessed her RFC by relying on an unsupported medical
opinion and improperly evaluating the consistency of her subjective statements.
Black asks that I reverse the ALJ's decision and remand for further proceedings.

### III.  Medical Records and Other Evidence Before the ALJ

In the fall of 2002, when she was 18 years old, Black began experiencing
malaise, fatigue, and swelling.  Testing indicated systemic lupus erythematosus
(SLE), and a renal biopsy performed in April 2003 showed class IV lupus nephritis
with 58% glomerulosclerosis.  In May 2003, she began a six-month treatment

---

[2] Black is now represented by counsel in this action for judicial review.

regimen with Cytoxan, a chemotherapy infusion medication.  She was also treated with steroids and another immunosuppressant, CellCept.  A renal biopsy in February 2004 showed membranous lupus with diffuse proliferative nephritis and 60% glomerulosclerosis.  She was maintained on CellCept.  Occasional flares were treated with Cytoxan.  From 2003 to 2011, Black underwent Cytoxan treatment four times.  (*See*, *e.g.*, Tr. 2425.)

When Black was first diagnosed with SLE and lupus nephritis in 2002-03, she was a sophomore at the University of Florida.  She reported experiencing migraine headaches in April 2003 associated with the stress of college studies.  (Tr. 1954.)  In October 2003, Black reduced her college courseload but maintained full time status with at least ten credits.  (Tr. 1225.)

For the remainder of 2003 and throughout 2004 and 2005, Black's physical examinations were essentially normal.  She had no joint or gastrointestinal complaints.  Treatment notes during this period showed that she was doing well and feeling better, but she consistently complained of fatigue.  Lab tests relating to SLE and kidney disease were continually monitored, but Black exhibited no outward signs or symptoms of disease processes other than fatigue.  Black occasionally stopped taking many of her medications of her own accord because of side effects as well as not wanting to take so many medicines.  On these occasions, her treating physicians adjusted the dosage and timing of the medications and

instructed her to restart and continue taking them.  (Tr. 1964, 2006.)  While she continued to feel well overall, her complaints of fatigue never abated.

On September 27, 2006, Black went to the emergency room with complaints of near syncope with decreased blood pressure, dizziness, palpitations, and inability to focus.  She reported that she experienced a syncopal event at work[3] on September 5 where she lost consciousness and hit her head.  She reported experiencing periods of weakness, lethargy, and fogginess thereafter.  (Tr. 1211.)  During a follow up exam on October 20, Black reported that she experienced another syncope episode at work on October 6.  Black was instructed to continue with her current medications.  (Tr. 1217-19.)  Black was prescribed Topamax for seizure activity and obtained good results.  (*See* Tr. 1231.)  Five months later, in March 2007, Black's treating physician noted that she no longer experienced syncope symptoms.  (Tr. 1233.)

Black withdrew from the University of Florida in October 2006 for medical reasons.  She testified at the administrative hearing that she withdrew because she was tired, dizzy, and had fainting spells.  (Tr. 210-11.)  Moreover, her physician restricted her from driving.  (Tr. 1216.)  In June 2007, Black's treating neurologist advised the university that Black wished to return to school and "should soon be ready to return" without limitations.  (Tr. 1222.)  Black graduated from the

---

[3] Black worked part-time at the Lupus Foundation.

University of Florida in 2008 with a degree in business and communications.  (*See* Tr. 1244.)

Follow up examinations in 2007 and later showed that Black was doing relatively well overall, but her physicians continued to note profound and chronic fatigue.  Black also began reporting weakness, joint pain, and muscle pain.  Her condition worsened in November 2011 when she began experiencing edema.  Renal biopsy continued to show class IV lupus nephritis.  (*See*, *e.g.*, Tr. 2293.)  Her conditioned worsened again in 2018 in conjunction with a stressful move from Florida to Missouri.  Renal biopsy in January 2019 showed class V lupus nephritis.  (Tr. 666.)  After her move to Missouri, Black began treatment for her impairments at Washington University Barnes-Jewish Health Center.  She was routinely examined and treated for, *inter alia*, SLE, lupus nephritis, stage 3 chronic kidney disease, hypertension, anemia, and chronic migraines.  And, given the high-risk medications she took, she was also continually monitored for medication toxicity and contraindications.  (*See*, *e.g.*, Tr. 671-77.)

In her request for reconsideration of the SSA's July 2019 initial decision, Black reported to the Commissioner that, during the relevant period, she reduced her college courseload to accommodate her chemotherapy schedule and that she eventually withdrew from school for a year because of difficulty juggling her classes and treatment.  She reported that she tried to work half days at the Lupus

Foundation during that time but was too sick to do so on most days.  Black stated that she needed help managing classes, errands, and treatment because of fatigue as well as nausea, vomiting, diarrhea, and fogginess she experienced as side effects from her medications.  She reported that she relied on the university's Office of Students with Disabilities for help because she often missed deadlines and turned in papers late because of those side effects, and she needed to take make-up tests. Her mother also traveled to the university and helped her with cooking, bathing, and general care during chemotherapy weeks.  (Tr. 515-18.)

At the administrative hearing in August 2021, the ME opined that Black's migraine headaches met listing level severity in February 2018[4] and that Black's lupus nephritis met listing level severity in 2020.  He opined that Black's seizure activity during the relevant period did not cause disabling limitations because they remitted over time.  The ME testified that he did not have any medical exhibits from September 2006 or earlier, but that recent medical records from Washington University "kind of tracked [Black's] course of lupus really well."  (Tr. 201-04, 208-09, 215-16.)  Relying on those Washington University records, the ME opined that Black's functional limitations were not disabling, and he assessed them as follows:

The lupus nephritis would have had limitations consisting of

---

[4] Black was involved in a motor vehicle accident in December 2008 after which she began experiencing severe migraine headaches about three times a week.  (Tr. 1244-45.)

limited amount of time on her feet because of the fact that she was having edema, and we can go back on that certainly to 2011, and so in terms of her being on her feet, I think it would be fair to say that she would have been limited to one hour at a time and two hours in a working day, that she would not have been limited in time working seated, that she would have been reasonably able to lift and carry 10 pounds – rather, 20 pounds occasionally and ten pounds frequently during that period of time.  That because of the joint disease she should not have been able to – she should not have been required to go on ladders or scaffolding, nor to be at unprotected heights and that she would have the ability to occasionally bend, stoop, and squat, that she would have been able to walk on level ground and/or stairs, and that she would have had no mental limitations, and that she would have been able to reach with either arm and she would have been able to do fine movement with either hand.

(Tr. 207-08.)

The ME also testified that remarkable bouts of fatigue are a feature of lupus and that severe fatigue is likely to persist with the condition despite treatment.  (Tr. 204.)  He further testified that lupus-related fatigue that interferes with work and non-working activities may be sufficient to meet Listing 14.02 for SLE (Tr. 205), and that disability may occur at the time one becomes unable to continue school because of it.  (Tr. 212.)  The ME testified that he did not interpret Black's inability to function as a student or worker as "going back to 2006," but he stated that the ALJ could find Black disabled at that point if she felt that Black's overall functioning was sufficiently disabling.  (Tr. 217.)

With respect to additional medical records and other evidence of record, I adopt Black's recitation of facts set forth in her Statement of Uncontroverted

Material Facts (ECF 17-1) as admitted and clarified by the Commissioner (ECF 18-1).  I also adopt the Commissioner's Additional Material Facts (*id.*), which Black does not dispute.  These statements provide a fair and accurate description of the relevant record before the Court.  Additional specific facts are discussed as needed to address the parties' arguments.

## IV.  Discussion

A.   Legal Standard

To be eligible for benefits under the Social Security Act, Black must prove that she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). To be entitled to child benefits on the earnings record of a parent, Black must show that her disability began before she turned 22 years old.  42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a)(5).  Black turned 22 on October 1, 2006.

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To make a final determination as to whether an adult child claimant is or is not disabled, the Commissioner employs the same five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520 that is applicable to adults.  *See Michaels v. Comm'r of Soc. Sec.*, No. 6:21-CV-2-DCI, 2022 WL 971854, at *1 (M.D. Fla. Mar. 31, 2022).  The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment.  At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work.  *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process).  If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis.  If she meets this burden and shows that she is unable to perform her past relevant work, the

burden shifts to the Commissioner at Step 5 to produce evidence demonstrating

that the claimant has the RFC to perform other jobs in the national economy that

exist in significant numbers and are consistent with her impairments and vocational

factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d

699, 702 (8th Cir. 2012).  If the claimant has nonexertional limitations, the

Commissioner may satisfy his burden at Step 5 through the testimony of a

vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is supported by substantial

evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402

U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010).

Substantial evidence is less than a preponderance but enough that a reasonable

person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968.

Determining whether there is substantial evidence requires scrutinizing analysis.

*Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well

as any evidence that fairly detracts from it. *McNamara v. Astrue*, 590 F.3d 607,

610 (8th Cir. 2010).  If, after reviewing the entire record, it is possible to draw two

inconsistent positions and the Commissioner has adopted one of those positions, I

must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793

(8th Cir. 2012).  I may not reverse the Commissioner's decision merely because

substantial evidence could also support a contrary outcome.  *McNamara*, 590 F.3d at 610.

B.    The ALJ's Decision

The ALJ determined that Black had not attained 22 years of age as of January 1, 2003, the alleged onset date of disability, and that she had not engaged in substantial gainful activity since that date.  The ALJ found that Black had the severe impairments of class IV lupus nephritis and near-syncope before attaining age 22, but that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 during the relevant time.  (Tr. 89-90.)[5]

The ALJ found that, prior to attaining age 22, Black had the RFC to perform light work with the following limitations:

> [S]he could stand and/or walk for two hours in an eight-hour workday. She could occasionally climb ramps and stairs, but had to avoid ladders, ropes, or scaffolds.  She could occasionally stoop, kneel, crouch, and crawl.  She should [] avoid extreme heat, extreme cold, hazards such as unprotected heights and moving mechanical parts, and work that requires operating a motor vehicle.

(Tr. 90-91.)  Considering Black's RFC, age, education, and work experience, the ALJ determined that VE testimony supported a conclusion that, during the relevant period, Black could have performed work as it existed in significant numbers in the national economy, and specifically, as a cashier, final assembler, and checker.  The

---

[5] The ALJ also determined that none of Black's other alleged impairments was severe during the relevant period.  (Tr. 89-90.)  Black does not challenge this determination.

ALJ thus found that Black was not under a disability at any time prior to attaining

age 22.  (Tr. 95-96.)

C.    RFC Determination

Black challenges the manner and method by which the ALJ determined her

RFC, arguing that the ALJ improperly evaluated the medical opinion evidence of

record, improperly based the RFC limitations on the ME's unsupported opinion,

and improperly discounted her subjective statements of symptoms.  For the

following reasons, I agree.

A claimant's RFC is the most she can do despite her physical or mental

limitations.  *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  The ALJ

bears the primary responsibility for assessing a claimant's RFC based on all

relevant, credible evidence in the record, including medical records, the

observations of treating physicians and others, and the claimant's own description

of her symptoms and limitations.  *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*,

390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a).  Accordingly, when

determining a claimant's RFC, the ALJ must necessarily evaluate the consistency

of the claimant's subjective complaints with the evidence of record.  *Wagner v.*

*Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957

(8th Cir. 2005).  In addition, because a claimant's RFC is a medical question, "the

ALJ should obtain medical evidence that addresses the claimant's ability to

function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir.

2001). Some medical evidence must support the ALJ's RFC determination.

*Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-

12. The burden to prove the claimant's RFC rests with the claimant, however, and

not the Commissioner. *Pearsall*, 274 F.3d at 1217.

    1.   *Evaluation of Symptoms*

    For purposes of social security analysis, a "symptom" is an individual's own

description or statement of her physical or mental impairment(s). SSR 16-3p, 2017

WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant

makes statements about the intensity, persistence, and limiting effects of her

symptoms, the ALJ must determine whether the statements are consistent with the

medical and other evidence of record. *Id.* at *8.

    When evaluating a claimant's subjective statements about symptoms, the

ALJ must consider all evidence relating thereto, including what are familiarly

known as "the *Polaski* factors," that is, the claimant's prior work record; daily

activities; the duration, frequency, and intensity of the symptoms; any precipitating

and aggravating factors; the dosage, effectiveness, and side effects of medication;

and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir.

2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history

omitted). *See also* 20 C.F.R. § 404.1529. If the ALJ finds that the statements are

inconsistent with the evidence of record, she must make an express determination and detail specific reasons for the weight given the claimant's testimony.  SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).  "The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints."  *Polaski*, 739 F.2d at 1322.

In this case, the ALJ did not apply any of the *Polaski* factors to explain why Black's subjective statements of symptoms she experienced during the relevant period were inconsistent with the evidence of record.  Instead, the ALJ relied on only objective medical evidence to discount Black's statements.  This was error.

In evaluating the consistency of Black's statements, the ALJ focused on her relatively normal physical examinations from 2003 to September 2006, noting that she had normal gait, normal range of motion, normal strength, no swelling, etc. (Tr. 92-94.)  The ALJ noted that while Black reported to her doctors in March 2004, March 2006, and June 2006 that she experienced fatigue, she had no other complaints during those encounters.  (Tr. 93.)  A review of the record in its entirety, however, shows that in addition to the isolated encounters the ALJ cited in her decision, Black also complained of fatigue to her doctors in February 2003, September 2004, December 2004, June 2005, and August 2005 – indeed at nearly

every examination during the relevant period – and her physicians sometimes described her fatigue as "profound" or "severe."  (*See* Tr. 1963.)  Black also complained to her doctors that she experienced medication side effects during the relevant period, including acid reflux, hot flashes, nausea, and memory problems. Her medications were continually adjusted based on her tolerance to them as well as their toxicity to her overall system.  The ALJ addressed none of this.

Nor did the ALJ evaluate Black's statements as they related to how fatigue and medication side effects affected her daily activities and functional ability during the relevant period.  Black testified at the administrative hearing that she withdrew from school because she could do nothing other than take care of herself. (Tr. 213.)  In her request for reconsideration, Black described in detail that because of her chronic fatigue and medication side effects during the relevant period, she needed help from her mother with bathing and cooking; she received special accommodations from school for missed assignments, late papers, and make-up tests; she had difficulty working half days at the Lupus Foundation; and she missed social commitments and became isolated.  Although these statements were part of the written record before the ALJ, the ALJ did not follow up on them during the hearing.  *Cf. Battles v. Shalala*, 36 F.3d 43, 44-45 (8th Cir. 1994) ("an adequate hearing is indispensable"); *Cox v. Apfel*, 160 F.3d 1203, 1209 (8th Cir. 1998) (ALJ's duty to develop facts fully and fairly is enhanced when claimant not

represented by counsel).  While the ALJ summarized these statements in her written decision (*see* Tr. 91), she looked to only the objective medical evidence in evaluating their consistency with the record.  (Tr. 92-94.)  It is well-settled that an ALJ may not discount a claimant's subjective complaints of disabling symptoms solely because the objective medical evidence does not fully support them. *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003); *Lewis v. Colvin*, 973 F. Supp. 2d 985, 1001-02 (E.D. Mo. 2013).  *See also* 20 C.F.R. § 404.1529(c)(2); SSR 16-3p, 2017 WL 5180304, at *5.

The objective medical evidence supports Black's subjective statements that she experienced chronic fatigue – sometimes severe – during the relevant period. Whether to credit or discount Black's subjective description of the fatigue's effect on her functional abilities must be based on an analysis of the *Polaski* factors in consideration of other evidence of record, which the ALJ did not do here.  The same holds true for Black's statements regarding her medication side effects.  I cannot conduct this analysis myself, nor can I find that the ALJ's failure to apply an appropriate *Polaski* analysis was harmless in the circumstances of this case. The ME testified that remarkable bouts of fatigue are consistent with a lupus diagnosis, that such fatigue can interfere with work and non-work activities at listing-level severity, and that disability may be found when the fatigue renders a person unable to continue with school or work.  If Black's subjective statements

are credited after being properly addressed, the ME's testimony could arguably support a finding that Black was disabled before attaining age 22. *See Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001) ("It is for the administrative fact-finder, in the first instance, to make this kind of choice, guided by the proper legal standard.  Courts should not make this determination in the first instance, unless the case is clear beyond substantial doubt[.]").

Because the ALJ's determination is not supported by good reasons and substantial evidence, I will not defer to her conclusion. *See Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).  The ALJ's failure to consider the *Polaski* factors requires remand so that the proper legal standard can be applied to Black's subjective statements of symptoms.  *Caviness*, 250 F.3d at 605 (cannot hold as a matter of law that ALJ's decision to disbelieve claimant was proper when he failed to discuss *Polaski* factors).

2.    *Medical Opinion Evidence*

Because a claimant's subjective complaints play a role in an ALJ's RFC assessment, *see Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010); *Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005), the failure to conduct a proper *Polaski* analysis itself renders an RFC conclusion suspect because it does not include all of the claimant's limitations.  *See Holmstrom v. Massanari*, 270 F.3d 715, 722 (8th Cir. 2001).  Moreover, for the following reasons, the ALJ also failed

to properly evaluate the medical opinion evidence of record.  It cannot be said, therefore, that the resulting RFC determination is supported by substantial evidence on the record as a whole.

Black filed her applications for benefits after March 2017.  Accordingly, the ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 404.1520c.  Under this Regulation, ALJs must consider all medical opinions equally and evaluate their persuasiveness according to several specific factors – supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the SSA's disability policies and their familiarity with other evidence in the claim.  20 C.F.R. § 404.1520c(c).  ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record."  20 C.F.R. § 404.1520c(b).  The opinions of State agency medical consultants are subject to this same review.  20 C.F.R. § 404.1513a(b)(1).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [she] considered the supportability and consistency factors . . . in [the] determination or decision."  20 C.F.R. § 404.1520c(b)(2).  "The explanation must be detailed enough so that it does not require the Court to merely

speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Bruton v. Kijakazi*, No. 3:20-CV-232, 2022 WL 1749828, at *6 (D.N.D. Feb. 8, 2022) (internal quotation marks omitted), *cited approvingly in Sumner v. Kijakazi*, No. 4:22-cv-00331-AFG, 2023 WL 2734215, at *5 (E.D. Mo. Mar. 31, 2023). "In other words, there must be a logical bridge between the evidence and the result." *Bruton¸* 2022 WL 1749828, at *6 (internal quotation marks omitted). An ALJ's failure to properly address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion is legal error and requires reversal. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in Regulation, as failure to comply with opinion-evaluation Regulation was legal error)). *See also Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021). ALJs need not explain in their decision how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

a.   State Agency Consultants

The record here contains a medical evaluation dated July 3, 2019, from Dr. Donna McCall, a medical consultant with disability determinations. It is unclear which medical records Dr. McCall reviewed, but her assessment addresses only

those records dated September 28, October 18, and October 20, 2006, relating to

Black's syncope events.  After summarizing those records, Dr. McCall concluded

that "there is insufficient evidence in [the] file to fully assess the claimant's

impairments prior to 9/30/2006" and that the medical evidence in the file does not

show that Black met or equaled a listing.  (Tr. 256, 264.)  In a psychological

evaluation dated July 1, 2019, psychological consultant Mark Altomari, Ph.D.

summarized the same records as Dr. McCall and reached the same conclusion, that

is, "there is insufficient evidence in [the] file to fully assess the claimant's

impairments prior to 9/30/2006" and that the medical evidence in the file does not

show that Black met or equaled a listing.  (Tr. 257, 265.)  Neither consultant

assessed Black's RFC.  (Tr. 258, 266.)  The disposition of Black's claims was "Not

Disabled" because "There is insufficient evidence to evaluate the claim."  (Tr. 258-

59, 266-67.)

In her written decision, the ALJ found the opinions of Drs. McCall and

Altomari persuasive, stating that the consultants provided narrative support for

their conclusions, cited "some" evidence from before Black turned 22, and that

their opinions that Black did not meet listing criteria was consistent with the

medical evidence from that period.  (Tr. 95.)  I am curious as to how a conclusion

of "insufficient evidence" can be considered a persuasive medical opinion in

determining a claimant's RFC, especially when the opinion contained no analysis

or conclusions regarding the claimant's limitations.  *Cf. LeMarr v. O'Malley*, No. 2:22cv00026, 2024 WL 209184, at *4, *9 (W.D. Va. Jan. 16, 2024 (ALJ found State agency consultant's "insufficient evidence" conclusion not persuasive because hearing record showed severe impairments and related limitations); *Tammy S. v. Commissioner of Social Security*, No. 1:21-cv-446, at *5, n.5 (S.D. Ohio Aug. 4, 2022) (ALJ did not include State agency consultant's opinion in summary of medical evidence because consultant found "insufficient evidence" to assess affect of claimant's impairments); *Stallard v. Kijakazi*, No. 2022 WL 93291, at *11 (W.D. Va. Jan. 10, 2022) (ALJ found State agency consultants' opinions not persuasive because they concluded there was insufficient evidence to evaluate claimant's claim).  Regardless, to the extent the ALJ could evaluate the consultants' opinions, she erred in finding them persuasive.

First, supportability:  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  The ALJ here found that the consultants' opinions were supported because they provided a narrative that included some evidence from the relevant period.  The "narrative" here was merely a limited summary of medical evidence that primarily addressed Black's syncope episodes in September and October 2006 and a conclusion that there was insufficient evidence to make an

assessment.  I find it difficult at best to consider a consultant's medical opinion as "supported" when the consultant concludes that there is insufficient evidence upon which to render an opinion.

As to consistency, "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 404.1520c(c)(2). The ALJ here found that the consultants' finding that Black did not satisfy listing criteria was "consistent with the medical evidence from that period."[6]  (Tr. 95.) That is the extent of the ALJ's discussion of this factor as to the consultants' opinions.  Such a cursory finding with no discussion is insufficient to satisfy the Regulation's requirement that the ALJ "explain" how she considered this factor in determining the persuasiveness of a medical opinion.  *See Martini v. Kijakazi*, No. 4:20 CV 1711 CDP, 2022 WL 705528, at *4 (E.D. Mo. Mar. 9, 2022).  Blanket statements, with no explanation, "will not do."  *Post v. Kijakazi*, No. 4:20-CV-315 RLW, 2021 WL 4355349, at *7 (E.D. Mo. Sept. 24, 2021) (internal quotation marks and citation omitted) (it is not enough to merely state that a medical opinion is consistent with the record).

For the reasons set out above, I cannot find that the ALJ's determination to

---

[6] Given the consultants' lack of analysis, it is unclear whether their conclusion that the evidence did not support a finding that Black met or equaled a listing was because there was insufficient evidence to make such a finding (which they also found) or because of a substantive consideration of that insufficient evidence.

consider the State agency consultants' opinions as persuasive is supported by substantial evidence on the record as a whole.

        b.     Medical Expert

Dr. Howard Shapiro was the ME who testified at the administrative hearing, and his opinions are summarized above.  In determining Black's RFC, the ALJ found that Dr. Shapiro's opinions were persuasive, and specifically his opinions that Black's kidney disease did not meet or equal listing level severity before she turned 22; and that her lupus nephritis caused limitations that were not disabling, and specifically that Black could

> remain[] on her feet for only one hour at a time and two hours in a full workday (at least as far back as 2011), but would not have limited her ability to remain seated. . . . [T]hat the claimant would have been able to lift 20 pounds occasionally and 10 pounds frequently. . . . [T]hat the claimant's combination of medically determinable impairments would have resulted in several environmental and postural limitations.

(Tr. 92.)[7]  The ALJ stated that Dr. Shapiro provided strong support for the basis of his conclusions and made findings that were consistent with the medical and other evidence dated on or before September 30, 2006.  (*Id.*)  To provide the analysis necessary in reaching this conclusion, the ALJ simply referred to "see further discussion below."  (*Id.*)  That "discussion," however, is merely a summary of the medical records.  There is no explanation of how the ALJ used that medical

---

[7] The ALJ also relied on Dr. Shapiro's opinion to find that Black's claimed impairments other than class IV lupus nephritis and near-syncope were not severe.  (*See* Tr. 89-90.)  As noted *supra* at n.5, Black does not challenge the ALJ's findings regarding non-severe impairments.

evidence to analyze Dr. Shapiro's opinions.  In short, there is no logical bridge between the evidence and the ALJ's conclusion that Dr. Shapiro's opinions are supported by or consistent with that evidence.  *See Bruton*, 2022 WL 1749828, at *6; *Amanda M. v. Kijakazi*, No. 3:20-cv-50272, 2022 WL 1773780, at *3 (N.D. Ill. June 1, 2022) ("A mere summary is not the same as meaningful analysis.").

Notably, as described above at Section IV.C.1, while the records summarized by the ALJ show that Black's physical examinations were essentially normal, those same records also show that Black continually complained of chronic fatigue throughout the relevant period, with Black's physicians sometimes describing that fatigue as severe or profound.  And Dr. Shapiro himself opined that remarkable and severe fatigue is associated with lupus and can be disabling when it interferes with work and non-work activities.  As described above, there was evidence before the ALJ that Black's fatigue and medication side effects interfered with her school, work, and non-work activities.  But the ALJ did not meaningfully address this evidence.  And, given Dr. Shapiro's testimony that he did not have records from September 2006 or before and that he relied on recent records from Washington University in assessing Black's limitations, it appears that Dr. Shapiro may not have reviewed all the relevant evidence when he rendered his opinions.

Accordingly, because the ALJ failed to properly explain the consistency and supportability of Dr. Shapiro's medical opinions as required by the Regulations,

and because it appears that Dr. Shapiro's opinions may have been based on an incomplete review of the record, I cannot determine without speculation whether the ALJ's acceptance of and reliance on Dr. Shapiro's opinions is based on substantial evidence on the record as a whole.

## V.  Conclusion

This is a complicated case.  Nevertheless, the ALJ's failure to properly consider Black's subjective statements of symptoms, coupled with her failure to properly evaluate the medical opinion evidence, leaves me unable to determine whether the RFC assessment was supported by substantial evidence on the record as a whole.  This case must therefore be remanded to the Commissioner to properly evaluate, identify, and clarify the medical and nonmedical evidence of record that supports her conclusions as to Black's RFC.

To the extent additional evidence may exist relevant to the time period at issue here – including medical evidence and other evidence such as school records, claimant testimony, and third-party observations – the Commissioner shall obtain and/or provide the parties an opportunity to submit such evidence to assist the Commissioner in determining Black's ability to function in the workplace before she attained age 22.

The ALJ must reevaluate Black's RFC, which must include a proper assessment of the record evidence and Black's subjective statements of symptoms.

The RFC shall be based on some medical evidence in the record and shall be accompanied by a discussion of the evidence in a manner that shows how the evidence supports each RFC conclusion.  The Commissioner is reminded that consideration must be given to the limitations and restrictions imposed by all of Black's medically determinable impairments during the relevant period, including limitations imposed by related symptoms such as fatigue as well as medication side effects.  20 C.F.R. § 404.1545 (severe and non-severe impairments and related symptoms must be considered).  *Cf. Vincent v. Apfel*, 264 F.3d 767, 769 (8th Cir. 2001) (RFC findings failed to account for medication side effects); *Hon v. Heckler*, 585 F. Supp. 1300, 1303-04 (W.D. Mo. 1984) (in assessing RFC, ALJ may not ignore testimony regarding non-exertional impairment of fatigue); *Cohen v. Berryhill*, No. No. 2:16-cv-01238-RMG-MGB, 2017 WL 3638229, at *6-7 (D.S.C. July 31, 2017) (fatigue is a non-exertional impairment that affects a person's ability to perform activities), *report and recommendation adopted by Cohen v. Berryhill*, 727 F. Supp. 3d 779 (D.S.C. 2017).

Finally, whether and to what extent the ALJ finds medical opinion evidence persuasive in determining Black's RFC must be properly informed and supported by the record as a whole, and the reasons therefore must be adequately articulated and explained in the decision.

Accordingly,

- 27 -

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and this case is **REMANDED** for further proceedings.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 4th day of March, 2024.